# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2127

_____

United States of America

*Plaintiff - Appellee*

v.

Garron Gonzalez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: March 18, 2016
Filed: June 27, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Garron Gonzalez was convicted of attempted sexual exploitation of minors in violation of 18 U.S.C. § 2251(a) and (e). Gonzalez appeals, seeking a new trial or a judgment of acquittal alleging that the district court[1] abused its discretion by granting

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

the jury's request during deliberations to listen to an audio recording that was admitted in evidence but not played at trial. For the reasons discussed below, we affirm.

## I.  BACKGROUND

In December 2010, while Gonzalez was on probation in North Dakota, his probation officer, Duane Johnson, scheduled an office visit with him for December 15, 2010. Johnson arranged the meeting so that a detective from Mandan, North Dakota, could speak with Gonzalez regarding another case. When Gonzalez missed the scheduled meeting, Johnson went to Gonzalez's home to meet with him and search his home (a condition of Gonzalez's release). During the search of Gonzalez's home and vehicle, Johnson seized two cell phones after a preliminary search of the phones "sparked [Johnson's] curiosity" and showed a potential violation of Gonzalez's probation. When questioned about the contents of the phones, Gonzalez admitted that he had been communicating with a fifteen- or sixteen-year-old girl, later identified as AG. Gonzalez was found to be in violation of the terms of his probation and was arrested.

The following day, December 16, 2010, a further search of the phones revealed a series of text messages between Gonzalez and AG, including two pictures of her genitalia and backside. The case was then referred to Special Agent Helderop with the Department of Homeland Security. North Dakota Bureau of Criminal Investigations Special Agent Harstad retrieved the pictures and text messages sent between Gonzalez and AG from the two confiscated cell phones. At trial, AG testified that she was fifteen-years-old when she met Gonzalez online through a video game. Gonzalez and AG exchanged numbers through the video game and began text messaging and talking on the phone. When Gonzalez asked AG's age, she told him she was sixteen. Eventually, Gonzalez and AG began discussing sexual acts and sending pictures of themselves, some of which were nude. AG testified that she did

not initiate sending the nude pictures. Rather, she sent the nude pictures because Gonzalez made her feel comfortable, gave her lots of attention, and asked for the pictures. She also noted that Gonzalez would put money on her phone so that they could continue text messaging each other.

After AG was cross-examined at trial, the government offered into evidence a copy of AG's audio-recorded interview with Detective Brandt from January 2011. Gonzalez specifically stated that he "ha[d] no objection" to the admission of the recording. The recording was never played during trial. Before the case was given to the jury, both parties' counsel and the court discussed whether the jury would be allowed to listen to the recorded interview. Gonzalez argued that although the recording was admitted in evidence, the jury could not listen to it during deliberations because it was not "published" in open court. The court held that because the recording "ha[d] been received in evidence . . . if they want[ed] to listen to it, they [were] entitled to listen to it." Gonzalez's main concern was that the jury would listen to only part of the interview. Thus, to prevent such action by the jury, the court, in agreement with both parties, decided that if the jury asked to hear the recording, the judge would bring the jury back into the courtroom, have them sit in the jury box, and play the entire interview in the presence of the court, both parties' counsel, and Gonzalez.

Soon after deliberations began, the jury requested to hear the recorded interview of AG. The jury was brought into the courtroom, and the audio recording was played in open court according to the procedures that had been previously agreed upon. Gonzalez did not object. The jury deliberated for approximately thirty-five minutes after hearing the recorded interview and returned a unanimous guilty verdict. On appeal, Gonzalez argues that by permitting the jury to listen to the audio recording

of AG's interview after the case had been argued and submitted to the jury, the district court improperly reopened the trial.

## II.    DISCUSSION

"It is within the sound discretion of the trial court to determine whether to allow a jury to review properly admitted testimony or recordings during deliberations." United States v. Jefferson, 725 F.3d 829, 836-37 (8th Cir. 2013) (quoting United States v. Muhlenbruch, 634 F.3d 987, 1001-02 (8th Cir. 2011)). We generally review a district court's response to a jury request for abuse of discretion. United States v. Faul, 748 F.2d 1204, 1218 (8th Cir. 1984). When a party has failed to object to the issue now on appeal, however, we review the decision for plain error. United States v. Jones, 662 F.3d 1018, 1027 (8th Cir. 2011).

The issue of whether the district court erred by permitting the jury to listen to the recorded interview with AG appears to have been waived. See Jefferson, 725 F.3d at 836-37; Jones, 662 F.3d at 1027. In Jefferson, the defendant failed to object to the playing of seven recorded phone calls discussed during the trial, and thus, this court stated the issue was "affirmatively waived." 725 F.3d at 836-37. In Jones, the defendant voiced his concerns about allowing the jury to listen to parts of wiretap tapes but never formally objected to the play-back and ultimately "assisted in devising the method by which the jury would hear the tapes." Jones, 662 F.3d at 1027. Thus, we held that Jones had waived his right to challenge the playing of the tapes. Id. Similarly, Gonzalez never objected to the admission of the recorded interview of AG at trial. At the conclusion of the trial, Gonzalez noted some concerns about the jury listening to only parts of the audio recording without court oversight. However, after the court stated that the jury was entitled to listen to the admitted audio recording, Gonzalez assisted the court in reaching the decision to play the entire recording in open court with both parties present if the jury requested to hear it during deliberations. There were no objections prior to, during, or after the recording was

-4-

played.  Thus, Gonzalez affirmatively waived his right to challenge the playing of the audio recording.

Waiver aside, the district court did not abuse its discretion, much less commit plain error, by allowing the jury to listen to the audio-recorded interview.  "It is within the sound discretion of the trial court to determine whether to allow a jury to review properly admitted testimony or recordings during deliberations." Muhlenbruch, 634 F.3d at 1001-02.  The audio recording was properly admitted in evidence, and Gonzalez "waive[d] any foundational objections."  Gonzalez also specifically stated that he "ha[d] no objection" to the admission of the recording. Thus, the district court properly determined, within its discretion, that the jury could listen to the received audio recording using the agreed-upon procedures.

Finally, to the extent Gonzalez challenges the sufficiency of the evidence, we disagree.  When reviewing the sufficiency of the evidence for a judgment of acquittal, we "view[] the evidence in the light most favorable to the guilty verdict, resolving all evidentiary conflicts in favor of the government, and accepting all reasonable inferences supported by the evidence."  United States v. No Neck, 472 F.3d 1048, 1052 (8th Cir. 2007).  "A motion for judgment of acquittal should be granted only 'if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'"  United States v. Cacioppo, 460 F.3d 1012, 1021 (8th Cir. 2006) (quoting United States v. Gomez, 165 F.3d 650, 654 (8th Cir. 1999)).  AG's testimony regarding her communication with Gonzalez, coupled with the inappropriate photographs of AG recovered from Gonzalez's cell phones, provide sufficient evidence for a reasonable jury to find Gonzalez guilty beyond a reasonable doubt.  This is not one of those rare cases where we may overturn the jury's guilty verdict.

## III.  CONCLUSION

The judgment of the district court is affirmed.

_____