# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3828

_____

United States of America

*Plaintiff - Appellee*

v.

Liban Hassan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: October 25, 2016
Filed: December 21, 2016

_____

Before RILEY, Chief Judge, BEAM and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Liban Hassan appeals his conviction, following a jury trial, for robbery in violation of 18 U.S.C. § 1951, after he and three others stole approximately $150 in

cash and several cartons of cigarettes from a convenience store gasoline station. We affirm the district court.[1]

## I.    BACKGROUND

The evidence adduced at trial indicated that Hassan and three associates, Yusuf Xasan, Abdifatah Hashi, and Fuad Buraale, were driving around Omaha when they formulated a plan to rob a gas station convenience store for cash and cigarettes. The store clerk and Xasan testified for the government at trial. Xasan stated that as the four were proceeding west through Omaha, the four of them ended up near the targeted convenience store and began by breaking into and stealing from unlocked cars in the neighborhood. Xasan testified that Hassan said they should go into the convenience store and take cigarettes and cash, which Hassan alleged he had done with success when living in Minnesota. Xasan testified that he parked the car at the store so as to avoid the security camera sight lines. Xasan also left the car running for a fast getaway. All four entered the store, and Buraale indicated he had a gun (but apparently did not) and yelled, "where's the money?" Xasan grabbed the clerk at the counter from behind, put some object next to the clerk's neck, and forced the clerk to open both cash registers. Xasan and Buraale took approximately $150 in cash and cartons of cigarettes. After robbing the store, the four went to Hassan's residence (he was staying with his sister) and split the proceeds.

During the clerk's testimony at trial, the government offered Exhibit 1, a DVD with video recordings of the robbery. The exhibit was a series of video clips, rather than one continuous video. The government laid foundation for the video via questions to the clerk who verified that the video clips (which he had viewed prior to trial) were a fair and adequate description of what happened during the robbery.

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

Prior to trial, during discovery, defense counsel was provided with a DVD that contained sixteen video angles of the robbery. However, at trial, the government only showed two of these clips to the jury during the testimony of the clerk, Xasan, and Hassan.

Nonetheless, one of the video clips shown at trial indicated that Hassan walked out of the convenience store shortly after walking in, and stood outside the door of the store. This video clip arguably supported both Hassan's defense theory that he did not participate or know the robbery was going to happen, and also the government's theory that Hassan helped secure the inside, and then went back outside to be the lookout. According to the testimony elicited at trial, Hassan appears to be covering his face while on video. Hassan stated on cross examination that he was doing so out of disbelief of what was going on inside the convenience store.

At the close of the government's evidence, Hassan unsuccessfully moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Hassan and his sister testified during the defense portion of the trial. Hassan asserted that he did not know his associates were going to rob the store and that is why he left immediately after going in the store. He testified that he did not initially run away because his cell phone was locked in the car, but when he later retrieved it, the phone was dead. Nonetheless, Hassan's sister testified that Hassan called her early in the morning, asked to stay at her house, and arrived there alone. Hassan again unsuccessfully moved for judgment of acquittal at the close of his defense case.

During closing argument, defense counsel, still not realizing that the jury would only be shown the two video clips shown during trial instead of the sixteen clips he received during discovery, told the jury they could view a recording with sixteen different angles of the robbery. At this point, the government objected. During a sidebar, defense counsel complained about the fact that the DVD being offered into evidence at trial was a truncated version of what he was given during

discovery. The district court gave a limiting instruction and the jury was only given the DVD with the two video clips shown during trial. The jury deliberated and found Hassan guilty of interference with commerce by means of robbery as charged in Count 1 of the indictment. Hassan moved pursuant to Federal Rule of Criminal Procedure 33 for a new trial, as relevant, arguing that it was error for the government to offer a different DVD at trial than the one counsel received during discovery, and that there was insufficient evidence to support the conviction. The district court denied the motion. Hassan appeals.

## II.    DISCUSSION

Under Rule 29, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29(c) permits defendants to move the court to set aside a verdict and enter judgment of acquittal after trial; however, a district court has very limited latitude to do so and must not assess witness credibility or weigh evidence, and the evidence must be viewed in a light most favorable to the government. United States v. Stacks, 821 F.3d 1038, 1043 (8th Cir. 2016). Federal Rule of Criminal Procedure 33(a) states that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." As distinct from Rule 29, the court has broad discretion in deciding motions for new trial, and its decision is subject to reversal only for a clear and manifest abuse of discretion. United States v. Amaya, 731 F.3d 761, 764 (8th Cir. 2013). Also in contrast to Rule 29, in considering a motion for new trial, the court need not view the evidence in the light most favorable to the verdict and it is permitted to weigh the evidence and evaluate the credibility of the witnesses. United States v. Knight, 800 F.3d 491, 504-05 (8th Cir. 2015). Nonetheless, motions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should rarely be exercised. Id. at 504.

Hassan argues that the government failed to establish the intent element of the crime of interference with commerce by means of robbery. Specifically, Hassan argues that the government failed to show that he knowingly robbed or aided and abetted in the robbery of the convenience store. Hassan makes two primary arguments; first, that he did not have the requisite mens rea for robbery (involving the use or threatened use of force or violence), as the only discussion in the car involved more of a shoplifting "grab and go" kind of crime. Second, Hassan makes a "mere presence" argument–that his being at the scene of the crime cannot establish that he knowingly robbed or aided and abetted in the robbery. See United States v. Reda, 765 F.2d 715, 719 (8th Cir.1985) ("[G]uilt cannot be inferred from . . . mere presence at the scene of a crime or a mere association with members of a criminal conspiracy."). In so doing, Hassan attacks Xasan's credibility. Hassan argues that Xasan's testimony does not establish that the discussion in the car included the possibility of either using or pretending to have a gun. Hassan also argues that Xasan was an especially un-credible witness because he was the actual perpetrator of the robbery and had motivation to lie to get a sentencing break. Hassan also points to several instances wherein Xasan arguably contradicted himself on direct examination and cross examination.

In evaluating a motion for judgment of acquittal, we cannot pass upon the credibility of witnesses or the weight to be given their testimony, as this is uniquely within the province of the trier of fact, and entitled to special deference. United States v. Goodale, 738 F.3d 917, 923 (8th Cir. 2013). Of course, in evaluating whether a new trial should be granted, we may evaluate the credibility of witnesses. Knight, 800 F.3d at 504.

Evidence in the record supports the jury's conclusion that Hassan had the requisite mens rea and intent for robbery and was not merely present at the scene. Xasan testified that Hassan came up with the idea to rob the convenience store. Video evidence indicated that Hassan entered the store with the three others, and then

shortly thereafter waited outside the door. Xasan testified that Hassan left the location in the vehicle with the three others and that Hassan personally received some of the cash and cigarettes taken from the store. For the purposes of the Rule 29 motion, Xasan's testimony is viewed in the light most favorable to the verdict, and we find there was sufficient evidence to support the verdict. Although Xasan testified on cross examination that there was no discussion of force or the use of a gun, a reasonable jury could have concluded that because the object of the crime was cash and cigarettes, use of force or threatened force would reasonably be necessary to complete the crime. Even if the four did not specifically mention an intent to use force (real or pretend) when discussing the crime, the object of the caper belies any notion that force would not be necessary. Cash and cigarettes are not out in the open on shelving like gum or candy. Any "grabbing" of cash or cigarettes would necessarily involve the use or threat of force, unless the four somehow knew the store employee would be complicit or completely uninterested in the crime. Finally, we find nothing in the record to suggest that the interest of justice requires a new trial to be granted under Rule 33.

Hassan also makes reference to the dispute over the video clips in his statement of the case, alleging that "[b]ecause counsel for the government and defense counsel were on different pages in terms of what digital evidence was on the key Exhibit, and the Appellant was prejudiced as a result, the Appellant now seeks a judicial determination of the lingering issue of whether or not such an inadvertent suppression of evidence justifies a new trial." There is no further mention of this argument in Hassan's briefing; however, because the issue was cursorily raised in the opening brief, we exercise our discretion to consider the arguments made to the district court on this issue in the post-trial motions.

The district court found that the government did not violate Brady v. Maryland, 373 U.S. 83 (1963), by virtue of its use of Exhibit 1 because the government had disclosed the entire video prior to trial. Brady covers the *suppression* of evidence,

-6-

id. at 86, not the use of evidence at trial that is packaged differently than it was during pretrial disclosures, which is essentially what happened here. Prior to trial, defense counsel was given a DVD with all the camera angle video clips, and the government used only a portion of those clips at trial. Defense counsel alluded to a problem with the way the government described the exhibit it was going to use, leading defense counsel to believe that the entire DVD would be shown at trial. But that possibility does not present a Brady issue. There is no question that Exhibit 1 was correctly authenticated and that a proper foundation was laid for the exhibit. The district court found there was "no evidence" that the government misled the court or the witness or the defense team with regard to Exhibit 1, and we do not see anything in the record to refute that notion.

## III. CONCLUSION

Accordingly, we affirm Hassan's conviction.

_____