# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-1803
_____

United States of America

*Plaintiff - Appellee*

v.

James Adam Earwood

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: April 16, 2025
Filed: August 8, 2025
[Unpublished]
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

PER CURIAM.

A jury found James Earwood guilty of distributing a controlled substance that killed someone. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C). Although he challenges the evidence the government used to connect him to the man's death, we affirm.

I.

Officers found Danny Birch dead in a hotel bathroom. With syringes surrounding his body and drugs nearby, they believed he had overdosed. The prime suspect was Earwood, who sent multiple text messages to Birch before he died. On his phone was a screenshot of a postal receipt with a tracking number that matched an open package found next to his body. Earwood had sent a similar message about a month earlier.

More evidence came to light during the investigation, including that Birch was not his only customer. Someone else had received a similar package and multiple messages from Earwood the same day. In one message, he said that "they found [a] dude dead in his hotel room," presumably a reference to Birch, and that it was his "1st confirmed kill."

The government relied on this evidence to prove that the fentanyl Earwood sold caused Birch's death. It also relied on the medical examiner's testimony to rule out other potential causes. From there, after the district court[1] denied a motion for a judgment of acquittal, the jury found him guilty of a single count of distributing a controlled substance resulting in death. *See id*. On appeal, Earwood challenges the admissibility of the medical examiner's testimony and the sufficiency of the evidence.

II.

In his view, the medical examiner's testimony presented more of a guess than a reasoned medical judgment. For support, he contrasts the conclusion that fentanyl caused Birch's death with the toxicology report showing a "subtherapeutic" level in his system. Earwood did not object to the testimony at the time, which means we

___

[1]The Honorable C.J. Williams, Chief Judge, United States District Court for the Northern District of Iowa.

will reverse only if the decision to admit it was a plain error that affected his substantial rights. *See United States v. Eagle*, 515 F.3d 794, 801 (8th Cir. 2008).

There was no plain error here. In giving his opinion, the medical examiner relied on the results of the toxicology report, the positioning and autopsy of Birch's body, and the pre-death symptoms he experienced to determine there must have been a "very short . . . time interval" between injection of the drugs and death. He then concluded that the drugs were the most likely cause based on his "knowledge, skill, training, experience[,] [and] education," *United States v. Johnson*, 860 F.3d 1133, 1139 (8th Cir. 2017) (citation omitted), even if he could not *completely* rule out other possibilities. The opinion, in other words, aided the "trier of fact" in understanding how Birch died, a complex and "specialized subject matter." *See id.* (citation omitted).

## III.

It also steepens the hill Earwood must climb to win his sufficiency-of-the-evidence challenges. His position is that the government did not prove (1) drugs caused Birch's death, much less that (2) *his* drugs were to blame. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C). He can prevail only if "no reasonable jury could have found [him] guilty beyond a reasonable doubt," *United States v. Ways*, 832 F.3d 887, 894 (8th Cir. 2016), "evaluating the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor," *United States v. Parker*, 871 F.3d 590, 600 (8th Cir. 2017) (citation omitted).

## A.

Start with whether Birch died of a drug overdose. On that point, the medical examiner told the jury much of what it needed to know. *See Burrage v. United States*, 571 U.S. 204, 218–19 (2014); *United States v. Trotter*, 837 F.3d 864, 868 (8th Cir. 2016) (noting that the jury is in the "best position" to assess witness credibility (citation omitted)). Based on multiple factors, he concluded that fentanyl

was the most likely cause of death.  Other evidence supported what he said, including the fact that Birch commented about not being able to "feel [his] ribs" in a message containing syringe and fire emojis.  Together, it was enough for a reasonable jury to conclude that drugs caused Birch's death.

It is true, as Earwood argues, that the medical examiner admitted that Birch was in poor health, which might have had "some effect."  But he concluded that a preexisting health condition was not the "principal" cause of death.  *See United States v. Bailey*, 54 F.4th 1037, 1040–41 (8th Cir. 2022) (explaining that a "reviewing court will not disturb [a] conviction" even when there are "alternative explanations for the government's evidence").  Nor were other drugs, even though the level of fentanyl in his system was "subtherapeutic."  *See United States v. Broeker*, 27 F.4th 1331, 1336 (8th Cir. 2022) (concluding that expert testimony supported a finding that fentanyl was a but-for cause, despite the presence of multiple drugs in the victim's body).

B.

Relying on the medical examiner's testimony and the other evidence, the jury could also conclude that *Earwood's* drugs caused Birch's death.  *See United States v. Fortier*, 956 F.3d 563, 568 (8th Cir. 2020) (noting that whether to accept an "innocent or culpable explanation" of the evidence is a "classic jury call").  One obvious link was the package lying near the body, which matched the tracking number from the screenshot.  Another was how Birch reacted after injecting the drugs.  Add the fact that Earwood himself thought his drugs were responsible, and there was more than enough for the jury to pin the blame on him.  *See United States v. Stenger*, 605 F.3d 492, 504 (8th Cir. 2010) ("The jurors [are] free to reach a logical conclusion based on the totality of the evidence presented at . . . trial[].").  Even if other drugs were present.

-4-

IV.

We accordingly affirm the judgment of the district court.

_____